Case No. 12-57263

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MEI LING,

Plaintiff-Appellant,

v.

CITY OF LOS ANGELES, CALIFORNIA; COMMUNITY REDEVELOPMENT
AGENCY OF THE CITY OF LOS ANGELES; REDROCK NOHO
RESIDENTIAL, LLC; JSM FLORENTINE, LLC; LEGACY PARTNERS
RESIDENTIAL, INC.; FPI MANAGEMENT, INC.; and GUARDIAN/KW
NOHO, LLC,

Defendants-Appellees.

On Appeal from the United States District Court, Central District of California
(Western Division)
District Court Case No. 2:11-CV-07774-SVW-E

APPELLANT'S REPLY BRIEF

Scott Parrish Moore (NE No. 20754)
Allison Dana Balus (NE No. 23270)
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, Nebraska 68102
(T) (402) 344-0500
(F) (402) 344-0588
spmoore@bairdholm.com
abalus@bairdholm.com

*Attorneys for Plaintiff-Appellant, Mei Ling*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT ................................................................................. 1

    A.    RedRock's refusal to even consider amending affordable housing covenant for the Lofts to provide Ms. Ling a Pantages unit as a reasonable accommodation violates the FHA and Rehabilitation Act. ................................................................. 1

    B.    NoHo 14 should have exempted Ms. Ling from the lottery as a reasonable accommodation. .................................................... 9

    C. Ms. Ling Presented More Than Sufficient Evidence to Survive Summary Judgment on Her Intimidation and Retaliation Claims Against Legacy ................................................................ 11

    D. Whether the Statute of Limitations bars Ms. Ling's claims is dependent on the factual record before the District court which is disputed and, therefore, the Court should not consider the issue for the first time on appeal. ...................................... 15

    E. Violations of HUD's Regulations Are Relevant Evidence in Determining Whether the City and CRA's Redevelopment Housing Program is Accessible ...................................... 19

III.  CONCLUSION ........................................................................... 24

TABLE OF AUTHORITIES

**Cases**

*Argenyi v. Creighton Univ.*, 703 F.3d 441 (8th Cir. 2013)..........................................4

*Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012).....................4

*Cherosky v. Faini*, 330 F.3d 1243 (9th Cir. 2003)..................................................17

*Cherry v. City Coll. of S.F.*, No. C04-4981 WHA, 2005 WL 2620560 (N.D. Cal. Oct. 14, 2005) ...........................................................................................22,23

*Garcia v. Brockway*, 526 F.3d 456 (9th Cir. 2008) ................................................17

*Giebler* ...........................................................................................................................7

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982).................................................................................................................17

*Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ....................................23

*Huezo*, 2007 WL 7289347, at *8 .................................................................22, 23

*In Re Wind Power, Inc.*, 841 F.2d 288 (9th Cir. 1988)............................................16

*Matarese v. Archstone Communities, LLC*, 468 F. App'x 283 (4th Cir. 2012). .....12

*Matarese v. Archstone Pentagon City*, 795 F.Supp.2d 402 (E.D. Va. 2011)..........12

*Romain v. Shear*, 799 F.2d 1416 (9th Cir. 1986), cert. denied, 481 U.S. 1050, 107 S. Ct. 2183, 95 L. Ed. 2d 840 (1987) .................................................................16

*Taylor v. The Hou. Auth. of New Haven*, 267 F.R.D. 36 (D. Conn. 2010) .............22

*Telesca v. Long Island Hous. P'ship, Inc.*, 443 F. Supp. 2d 397(E.D.N.Y. 2006)..22

*Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. Of Pittsburgh*, 382, F.3d 412 (3d Cir. 2004)..............................................................................................21

*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 34 L. Ed. 24 415, 93 S. Ct. 364 (1972)................................................................................................13

*United States v. Cal. Mobile Home I*, 29 F.3d at 1418 ............................................5

*United States v. Greger*, 716 F.2d 1275 (9th Cir. 1983), cert. denied, 465 U.S. 1007, 79 L. Ed. 2d 234, 104 S. Ct. 1002 (1984)...............................................16

*Walker v. City of Lakewood*, 272 F.3d 1114 (9th Cir. Cal. 2001).............................14

**Statutes**

1988 U.S.C.C.A.N. 2173, 2185 .......................................................................9

24 C.F.R. § 8.22.........................................................................20, 21,22, 23

24 C.F.R. § 8.26.........................................................................................21,23

24 C.F.R. § 8.27..................................................................................21,22,23

24 C.F.R. § 8.4(b)(1)(v); 24 C.F.R. § 8.4 (b)(4)(i)..................................................20

29 U.S.C. § 794................................................................................................1

42 U.S.C. § 3601 *et seq.* ....................................................................................1

42 U.S.C. § 3617................................................................................................11, 13

Cal. Govt. Code § 12955.7 .................................................................................11

## I.     INTRODUCTION

For over six years, Mei Ling has been in search of accessible and affordable housing that would allow her to accomplish the very basic activities of daily living such as bathing and using the toilet.  During this period, Ms. Ling has explored every avenue to secure accessible housing through the Redevelopment Program ("Program") operated by the Community Redevelopment Agency of the City of Los Angeles ("CRA") and the City of Los Angeles ("City").  The Program was created using state and federal tax dollars to assist persons who are unable to pay the high market rate for housing in Los Angeles.  RedRock NoHo Residential LLC ("RedRock"), Guardian/KW NoHo, LLC ("Guardian"), and FPI Management, Inc. ("FPI") have received funds from the Program to develop, build, and operate The Lofts and NoHo 14.  Ironically, while RedRock, Guardian, and FPI have been financially enriched by the Program, Ms. Ling, the very type of person for whom the Program was created, has been denied accessible and affordable housing because these housing providers along with the City and CRA simply refuse to grant her reasonable accommodation.

## II.     ARGUMENT

**A.     RedRock's refusal to even consider amending CRA affordable housing covenant for the Lofts to provide Ms. Ling a Pantages unit as a reasonable accommodation violates the FHA and Rehabilitation Act.**

The Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.* ("FHA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") require RedRock, the City, and the CRA (the "RedRock Defendants") to provide Ms. Ling reasonable accommodations to ensure she has an equal opportunity to use and enjoy The Lofts.  In their briefs, the RedRock Defendants claim that Ms. Ling

1

failed to establish a disability-based necessity for a Pantages unit because the affordable studio units are "handicapped accessible" and she should have just made do with these units. They add that even if Ms. Ling established a disability-based necessity for a Pantages unit, they have no obligation to even consider amending the affordable housing covenant to replace a current studio unit with a Pantages unit. The unsupported assumptions made by the RedRock Defendants are insufficient to overcome the conclusion that there is a genuine issue of material fact as to whether Ms. Ling has established "necessity" for a Pantages unit and whether amending the affording housing covenant is "reasonable."

     1.    <u>There are genuine issues of material fact as to whether Ms. Ling has established "necessity" for the Pantages unit at The Lofts.</u>

As explained in her Opening Brief, Ms. Ling's necessity for the Pantages Unit springs from the physical limitations caused by her disability that the studio units cannot accommodate. Ms. Ling's necessity includes both the need for sufficient space to use and enjoy the residence in her wheelchair- especially in the bathroom- and her need for privacy from her male caregiver who she needs to assist her in activities of daily living. The record before the District Court contained facts from which a jury could conclude that the studio units did not provide Ms. Ling sufficient accessibility as compared to the Pantages unit and, therefore, the RedRock Defendants' offer of only studio units did not provide Ms. Ling an equal opportunity to use and enjoy The Lofts.

2

The RedRock Defendants argue that Ms. Ling is unable to establish necessity because the Kodak unit is "an appropriate alternative" accommodation to Ms. Ling's request for a Pantages unit.  However, RedRock admits that it never actually offered Ms. Ling a Kodak unit and has provided no explanation for why it failed to do so.  The RedRock Defendants cannot claim that the availability of the Kodak unit is a reasonable alternative accommodation when RedRock did not actually offer Ms. Ling that unit.  In fact, if the Kodak unit is a reasonable alternative to Pantages unit, which Ms. Ling denies, the fact that RedRock did not offer Ms. Ling a Kodak unit raises a genuine issue of material fact as to whether RedRock's failure to offer the unit is in itself a failure to provide a reasonable accommodation.

The RedRock Defendants also assert that Ms. Ling cannot establish a necessity for the Pantages unit because there is nothing unique about the Pantages unit as compared to the studio units from an accessibility standpoint because all of the affordable units contain "accessibility features" and are compliant with minimum accessibility standards.  The City summarized the argument by stating Ms. Ling "is [not] entitled to a unit with all the bells and whistles that would make same [sic] *ideal* or devoid of *difficulty*."  Perhaps such callous indifference is merely the RedRock Defendants' ignorance of Ms. Lings disability-related needs or the law.  However, it can hardly be said that a person with a disability is seeking

3

"all the bells and whistles" when she simply asks for a unit in which she can bathe, cook, use the toileting facilities, and have privacy from her male caregiver. Simply put, it should be for the jury to decide if Ms. Ling needs a Pantages unit to accommodate her disability, not a group of non-disabled housing providers and local governmental officials who have failed to even consult a person with a disability before concluding Ms. Ling's inability to use the studio units at The Lofts is nothing more than a "*difficulty*" to her.

Regardless, the RedRock Defendants' argument that Ms. Ling should accept a "handicapped unit" without an analysis of whether such a unit actually provides an equal opportunity for Ms. Ling to use and enjoy housing was soundly rejected by this Court in *Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012).[1] Like the argument Disney made in *Baughman*, the RedRock Defendants claims that "necessary" could only mean one thing: "can't do without." *Baughman* clearly instructs that this is not the standard. The FHA and Rehabilitation Act provide that the RedRock Defendants must ensure persons with disabilities have an

---

[1] The Eighth Circuit applied this Court's reasoning in *Baughman* to reasonable accommodation claims brought pursuant the Rehabilitation Act. In *Argenyi v. Creighton Univ.*, 703 F.3d 441, 450-51 (8th Cir. 2013), the court held that the Rehabilitation Act requires recipients of federal financial assistance to ensure participants with a disability have a "like" or "equal benefit" as compared to non-disabled participants, rather than merely ensuring the person with a disability is not "effectively excluded" from the program.

equal opportunity to use and enjoy the housing in question as compared to non-disabled persons. The RedRock Defendants' assertion that they need only allow a person with a disability to get into the front door and have no obligation to ensure equal use and enjoyment of the housing regardless of the difficulty is simply misplaced.

What is more, merely calling units at The Lofts "handicapped accessible" and stating that all units have "accessible features" does not insulate the RedRock Defendants from considering individualized reasonable accommodation requests. Indeed, evaluating requests for reasonable accommodation is "highly fact-specific, requiring case-by-case determination." *United States v. Cal. Mobile Home I*, 29 F.3d at 1418; *see also Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) (inquiry "depends on the individual circumstances of each case" and "requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards"). While compliance with minimum accessibility codes is certainly evidence a jury can consider in determining if Ms. Ling had a necessity for the Pantages Unit, it is not the end. If it were, the reasonable accommodation requirements of the FHA and Rehabilitation Act would be superfluous.[2]

---

[2] To the extent minimum accessibility codes are relevant in determining if the Pantages unit is "necessary" for Ling, the affordable studio units at The Lofts do not even meet minimum accessibility standards that the RedRock Defendants claim makes them "handicapped accessible." As Ms. Ling explained in her opening brief, the Kim Report listed numerous elements of units at The Lofts that are not even compliant with the Uniform Federal Accessibility Standards and California Building Code. even establish the units at The Lofts meet even minimum accessibility standards.

With regard to Ms. Ling's privacy needs, the RedRock Defendants argue that offering to put up a "partition" in a studio apartment was sufficient to meet her needs. The fact that RedRock continues to use the word "partition" instead of wall is significant. The Pantages one-bedroom unit is larger and has walls to ensure adequately privacy for Ms. Ling from her male caregiver. There is a material difference in the privacy offered in the Pantages unit as compared to the affordable units. It is again for the jury to decide if offering a small unit and putting up a make-shift partition provides Ms. Ling an "equal" or "like" benefit as compared to those residents who do not require a caregiver.

In short, the RedRock Defendants have chosen to simply ignore Ms. Ling's specific needs and make unsupported statements that she could simply make do with a studio "handicapped unit." This argument is fundamentally flawed and inopposite to intent of the FHA and Rehabilitation Act that housing providers make an individualized, case-by-case determination of whether an accommodation is necessary to ensure a "like" or "equal" benefit as compared to residents without a disability.

2.   The RedRock Defendants have offered no evidence that amending the affording unit covenant is unreasonable.

The RedRock Defendants argue that even if Ms. Ling can establish

6

necessity, her request for a Pantages unit is unreasonable as a matter of law.[3] RedRock claims that in order to rent the Pantages unit under the affordable housing program it would have to "renegotiate" the covenant with the CRA/LA.[4]  It claims this process is legally "complicated" and, therefore, imposes an undue burden.  The fact that a process is "complicated" does not equate to an undue burden.  In fact, RedRock made absolutely no attempt to "renegotiate" or amend the covenant, it simply informed Ms. Ling that it was unwilling to do so.  RedRock must offer something more than a statement that the process is "complicated" to establish an undue burden.

RedRock also argues that replacing a studio unit with a Pantages unit would fundamentally alter it housing program because it would require The Lofts to take a unit from a current resident or someone on the wait list.  This is simply a red herring.  The determination of whether RedRock unlawfully refused to grant Ms. Ling a reasonable accommodation is based upon the facts at the time Ms. Ling

---

[3]   The Appellees argue that *Giebler* establishes that Ms. Ling has the burden of establishing her requested accommodation is reasonable.  As the District Court noted, however, this Court has not decided which party bears the burden of demonstrating the reasonableness of a requested accommodation under the FHA or under the Rehabilitation Act.  Ms. Ling explained in her Opening Brief why the Appellees should bear this burden and will not rehash the argument herein.

[4] RedRock's argument that Ms. Ling requested that it add a Pantages as an additional affordable unit is simply incorrect.  Rather, Ms. Ling requested that RedRock replace an existing affordable studio unit with a Pantages unit.

made her request for reasonable accommodation.  Ms. Ling has continually attempted to obtain a Pantages unit and the RedRock Defendants have consistently indicated they were attempting to accommodate her.  From 2007 until the present, RedRock has had multiple opportunities to replace a studio unit with a Pantages unit without displacing a resident.  Indeed,  RedRock has admitted it offered Ms. Ling an affordable studio unit at the time she requested the reasonable accommodation.  Because an affordable unit was available to Ms. Ling at that time means RedRock could have sought to amend the covenant to replace the studio unit it offered Ms. Ling with a Pantages unit.  The fact that all affordable units are currently occupied is immaterial to whether Ms. Ling's request fundamentally altered the housing program at the time Ms. Ling made her request or on the many occasions when the units have turned over since 2007.

Finally, RedRock argues that requiring it to accept less rent for the Pantages unit, regardless of the size of the actual financial hardship, fundamentally alters its housing program.  In making this argument, RedRock assumes it would have it would lose rent if a Pantages unit was part of the affordable housing program. RedRock has presented no evidence that such a loss would occur.  More importantly, even were there a difference in the subsidy RedRock would receive for the Pantages unit, Ms. Ling agreed to pay the difference in rent that RedRock may suffer as a result of designating a Pantages unit as affordable.  If Ms. Ling

8

paid the difference, RedRock would suffer no financial burden and, accordingly, there is no fundamental alteration in its ability to collect rent.

The bottom line of the RedRock Defendants' position is that they do not believe they need to even consider amending the affordable unit covenant as a reasonable accommodation.   This argument requires the Court to hold that restrictive covenants are exempt from reasonable accommodation requirements of the FHA and Rehabilitation Act.   To the contrary, covenants hold no special exemption from the reasonable accommodation obligations imposed by these statutes.   Indeed, amending the covenant is the exact type of accommodation that Congress envisioned in passing the FHA.   The House Report accompanying the FHA stated that the Act is "intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community."   1988 U.S.C.C.A.N. 2173, 2185.   There is at the very least a question of fact for the jury to decide if amending the covenant imposed an undue burden or fundamentally altered the housing program in question.

**B.     NoHo 14 should have exempted Ms. Ling from the lottery as a reasonable accommodation.**

Guardian, FPI, the City, and CRA (the "NoHo Defendants") claim that Ms. Ling is unable to show that she has a disability-related need supporting her request

9

for an exemption from the lottery NoHo conducted to determine who would be awarded an affordable unit. In essence, the NoHo Defendants argue that it would only have to exempt Ms. Ling from the lottery if she could establish she cannot afford a market rate unit because of her disability. However, this argument misses the point. Ms. Ling already qualified for an affordable unit, she requested an accommodation from the lottery process that was necessary because she had a disability-related need for a unit that the other non-disabled lottery participants do not have- namely, the building's direct and immediate access to the public transportation and community amenities Ms. Ling needs because of her disability. As discussed in the Opening Brief, the evidence in the record supports a finding of a causal link between Ms. Ling's disability and the need for the requested accommodation to provide her an equal opportunity to live at NoHo 14.

Ms. Ling's request was also reasonable. The NoHo Defendants have pointed to no facts in the record that support that they would have suffered an undue financial and administrative burden if NoHo 14 would have granted Ms. Ling an exemption to the lottery. Indeed, NoHo 14 would have received the same rental income from Ms. Ling as any person selected in the lottery. The NoHo Defendants assert that exempting Ms. Ling from the lottery would have fundamentally altered the housing program because the lottery was an essential aspect for prioritizing placement of potential tenants. The NoHo Defendants

10

appears to believe that if they show the lottery is fundamentally altered they need not provide Ms. Ling the exemption.  They again miss the target.  The "housing program" at issue here is providing affordable housing units to individuals who meet the income qualifying standards set forth in the CRA Program.  In order to establish that Ms. Ling's request for accommodation is unreasonable, the NoHo Defendants must prove that exempting her from the lottery fundamentally alters NoHo's ability to meet the requirements of the CRA program.  However, the NoHo Defendants have presented no evidence that exempting Ms. Ling from the lottery would in any way interfere with their ability to meet the CRA Program or provide affordable housing units to qualified individuals of whom Ms. Ling is one.

**C.     Ms. Ling Presented More Than Sufficient Evidence to Survive Summary Judgment on Her Intimidation and Retaliation Claims Against Legacy**

In its Answering Brief, Legacy makes two feeble arguments in support of the district court's summary judgment order dismissing Ms. Ling's intimidation and retaliation claims under 42 U.S.C. § 3617 and Cal. Govt. Code § 12955.7. First, it contends that Ms. Ling did not engage in "protected activity," a necessary element of her claims.  Second, it disputes that Ms. Ling demonstrated that Legacy's reason for calling the policy was pretextual.  Neither argument is compelling.

11

1.    The District Court correctly found that Ms. Ling satisfied her prima facie burden, including that she engaged in protected activity

As explained in Ms. Ling's opening brief, the District Court correctly found that Ms. Ling had established a prima facie case of intimidation and retaliation, including the first element: that she engaged in a protected activity.  (Opening brief at 49-50; ER at 55).  The district court held:

> Plaintiff visited NoHo 14 on November 1, 2009 to submit applications for NoHo 14's affordable units, follow up on the status of her applications, "express her reasonable accommodation requests," and assist others in seeking housing at NoHo 14.  At a minimum, making a request for reasonable accommodation is a protected activity under Sections 3617 and 3604(f).

(ER at 55) (citing *Matarese v. Archstone Pentagon City*, 795 F.Supp.2d 402, 443 (E.D. Va. 2011), *aff'd in part, vacated in part on other grounds sub nom*, *Matarese v. Archstone Communities, LLC*, 468 F. App'x 283 (4th Cir. 2012).  Legacy does not deny that Plaintiff made a request for reasonable accommodation or that a request for reasonable accommodation can constitute protected activity.  Instead, Legacy protests that Ms. Ling did not engage in protected activity because her "frequent" visits to NoHo 14 were a "campaign of harassment and badgering of Legacy employees at NoHo 14."  (Legacy's Answering Brief at 10).  Legacy cites the following as evidence of this "campaign":  Ms. Ling's frequent visits, that she brought other persons with disabilities to NoHo 14 on these visits, that she asked to see units at NoHo 14 multiple times, and a "misunderstanding" by one of the

12

NoHo 14 staff members that one of Ms. Ling's companions was videotaping him. (*Id*. At 10-11). Legacy cites no case law demonstrating that such actions by a plaintiff somehow negate her protected activity. Moreover, even if Legacy had raised a legitimate question as to whether Ms. Ling engaged in protected activity, its evidence would do no more than raise a question of material fact that must be decided by a jury.

Legacy goes on to argue that calling the police on just one occasion "did not interfere in any way with Ling's continued visits to the property on later dates" and that she "further was not impeded in any way with her eventual application for the affordable units…." Legacy's assertions appear to be an argument that calling the police to escort Ms. Ling and her group out on this one occasion does not amount to "adverse action" to support her intimidation and retaliation claims. Such an argument is without merit. This Court has held:

> In the context of a § 3617 claim, that adverse action must be in the form of 'coercion, intimidation, threats, or interference.' … As an initial matter, we observe that § 3617 does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability. … To 'coerce' is to 'compel to an act or choice by force, threat, or other pressure.'
>
> ***
>
> The Supreme Court has instructed that we are to treat 'the language of the [FHA as] broad and inclusive.' *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 34 L. Ed. 24 415, 93 S. Ct. 364 (1972) We have previously explained that 'interference,' in particular, 'has been broadly applied to reach all practices which have the effect of

13

interfering with the exercise of rights under the federal fair housing laws.'

*Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. Cal. 2001). Calling the police without justification and having them escort Ms. Ling and her guests from the NoHo 14 property, even if only once, undoubtedly meets these definitions of coercion and/or interference, particularly when "broadly applied." For these reasons, Legacy's arguments in its Answering Brief do not support the district court's summary judgment award.

    2.    <u>Legacy ignores the evidence proffered by Ms. Ling demonstrating the pretext in Legacy's asserted reason for calling the police.</u>

Legacy argues that Ms. Ling has failed to present admissible evidence to dispute Mr. Meredith's "good faith" belief that she had created a blockade of the building entrance. To the contrary, as set forth in pages 51 through 54 of Ms. Ling's opening brief, the record contains significant evidence challenging Legacy's legitimate, non-discriminatory reason for calling the police:

- Factual discrepancies between Mr. Meredith's account and the accounts of Ms. Ling and Ms. Soto, such as whether Ms. Ling's group finished the tour before or after the police had left (ER at 110-11, 453,-54, 459);

- The fact that Mr. Meredith admitted that he was at the property that day and could have gone to see for himself whether Ms. Ling's group was actually blocking the door before he called the police (ER at 459);

- The fact that Ms. Ling and all three of her companions were in wheelchairs (ER at 110);

14

- Ms. Ling's testimony that she overheard Mr. Meredith state to the police that he called them because Legacy "did not want to do business with" Ms. Ling and her companions (ER at 111);

- Ms. Ling's advocate's previous warning to Legacy from that NoHo 14 staff had been instructed to call the police and have Ms. Ling removed if she came to the property again;

- Ms. Ling's advocate's observation of Mr. Meredith previously screaming at Ms. Ling to leave and threating to call the police (ER at 158-60).

This evidence is more than sufficient to meet Ms. Ling's burden of demonstrating that Legacy's purported justification for calling the police was "merely a pretext for a discriminatory motive" for purposes of defeating summary judgment. At a minimum, this evidence creates a genuine dispute of material fact, and Legacy's conclusory statement that Mr. Meredith believed "in good faith" that Ms. Ling was impeding the business of the property by blocking the door is insufficient, in and of itself, to support dismissal of Ms. Ling's claims as a matter of law. For these reasons, the district court erroneously granted summary judgment to Legacy on Ms. Ling's intimidation and retaliation claims.

**D.    Whether the Statute of Limitations bars Ms. Ling's claims is dependent on the factual record before the District court which is in dispute and, therefore, the Court should not consider the issue for the first time on appeal.**

Despite the fact that the District Court did not address whether Ms. Ling's claims were barred by the applicable statute of limitations, the RedRock Defendants have raised the issue before this Court. "As a general rule, the court of

15

appeals does not consider issues raised for the first time on appeal." *In Re Wind Power, Inc.*, 841 F.2d 288 (9th Cir. 1988) (citing *United States v. Greger*, 716 F.2d 1275, 1277 (9th Cir. 1983), cert. denied, 465 U.S. 1007, 79 L. Ed. 2d 234, 104 S. Ct. 1002 (1984)).  When this Court has exercised discretion to review an issue not addressed by the district court it has only been under the limited circumstances in which "the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* (citing *Romain v. Shear*, 799 F.2d 1416, 1419 (9th Cir. 1986), cert. denied, 481 U.S. 1050, 107 S. Ct. 2183, 95 L. Ed. 2d 840 (1987)). The limitations period applicable to a claim filed pursuant to Section 504 of the Rehabilitation Act of 1973 is a question of law.  However, whether Ms. Ling timely filed her complaint within the applicable limitation period is dependent on the factual record which was not fully developed before the District Court and is subject to material dispute.

The RedRock Defendants claim that the limitations period began on November 2, 2007, because Ms. Ling included the phrase "[r]egarding your relayed information that 'the owners have made their *final decision*" in an email she sent on that date in response to Loft's October 17, 2007 letter that it would not seek to include a Pantages unit in the Program.  Ms. Ling's stray statement in an email which simply repeated what she was told by The Lofts does not establish as a matter of law that the limitations period began on that date.  Indeed, there are

genuine issues of material fact as to whether the RedRock Defendants' conduct is a continuing violation of the FHA and Rehabilitation Act and whether Ms. Ling's ongoing efforts to secure accessibility housing through the Program tolled the statute of limitations.

In the housing context, "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within [the statutory period, running from] the last asserted occurrence of that practice." *Garcia v. Brockway*, 526 F.3d 456, 461-62 (9th Cir. 2008) (*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (holding that under the Fair Housing Act a design and construction violation is not a continuing violation but a discrete act as opposed to ongoing policy of discrimination); *See also Cherosky v. Faini*, 330 F.3d 1243 (9th Cir. 2003). The RedRock Defendants' have made clear that they do not believe they have to consider amending the CRA affordable housing covenant under any circumstances. Their outright refusal to even consider amending the covenant as a reasonable accommodation is not a discrete act of discrimination but rather an ongoing discriminatory policy. The statute of limitations begins to run on challenges to such an ongoing continuing violation of the FHA and Rehabilitation Act only when the housing provider revokes the policy.

17

Moreover, Ms. Ling repeatedly made attempts to obtain a housing unit in the Program since June 2007 and she remains today unable to obtain housing that meets her needs. Her attempts included applications, inquiries regarding her status on wait lists, and requests for reasonable accommodations made to the CRA and the owners and managers of The Lofts and NoHo 14. In response, Ms. Ling was informed at various times that she was first on the wait list or that various public officials were working to secure her accessible housing. Ms. Ling also requested that The Lofts and NoHo 14 change the manner in which they assign their affordable housing units to ensure she and other persons with disabilities had an equal opportunity to obtain affordable housing and benefit from the CRA program.

Neither the October 17, 2007 letter, nor Ms. Ling's subsequent email, provided notice to Ms. Ling that her requests for reasonable accommodation were permanently denied. In fact, the October 17, 2007 letter left open the possibility that the CRA could grant Ms. Ling's requested accommodations and, therefore, cannot be construed as a final denial of her multiple requests for reasonable accommodation. Indeed, the City and CRA subsequently notified Ms. Ling that they were working on trying to find her housing. Because at various times CRA and City officials told Ms. Ling that they were working on obtaining housing for her, Ms. Ling never believed she was permanently denied housing by the City or CRA at the Lofts or that further attempts to secure such housing was futile.

18

Importantly, the issue of when the limitations period on Ms. Ling's claim began to run is dependent on the factual record which is in dispute. Addressing whether Ms. Ling's claim was timely filed in this case does not fit within this Court's narrow exception to considering an issue on which the District court did not rely in granting summary judgment.

**E.     Violations of HUD's Regulations Are Relevant Evidence in Determining Whether the City and CRA's Redevelopment Housing Program is Accessible**

Violations of HUD's regulations interpreting Section 504 can be used as evidence in construing the CRA and City's obligations under the Rehabilitation Act and interpreting substantive violations of Section 504. In their Answering briefs, the CRA and City argue that HUD's regulations cannot be privately enforced. However, Ms. Ling does not seek to privately enforce HUD's regulations but instead seeks to use the CRA and City's violations of the regulations as evidence that the CRA and City have violated Section 504 itself by failing to ensure that their Redevelopment Housing Program provides meaningful access to people with disabilities.

HUD's regulations prohibit the City, "directly or through contractual, licensing, or other arrangements," from discriminating in violation of the Rehabilitation Act and prohibit it from perpetuating the discrimination of another by aiding or perpetuating discrimination by providing significant assistance to

19

another entity that in turn discriminates or otherwise limiting a person with a disability's enjoyment of a right, privilege or opportunity enjoyed by others. *See* 24 C.F.R. § 8.4(b)(1)(v); 24 C.F.R. § 8.4 (b)(4)(i) ("In any program or activity receiving Federal financial assistance from the Department, a recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration the purpose or effect of which would: (i) Subject qualified individuals with handicaps to discrimination solely on the basis of handicap"). HUD Section 504 regulations also describe specific architectural and other requirements that apply to particular housing projects such as The Lofts that receive federal financial assistance that originated with the City and was given to the CRA to carry out the CRA and City's housing programs. For example, HUD defines one element of accessibility as requiring that five percent of the total dwelling units in new multifamily housing projects receiving federal financial assistance meet the requirements set forth in the Uniform Federal Accessibility Standards ("UFAS") for accessibility for people with mobility impairments, and that an additional two percent must be accessible per UFAS requirements for people with hearing or vision impairments. 24 C.F.R.§ 8.22(a) & (b).

Multifamily housing projects receiving federal financial assistance must take steps to ensure that accessible dwelling units in those projects are occupied by people who need the accessibility features of those units, including offering

available units first to people who need the accessibility features and taking steps to ensure that advertising and other information regarding the availability of accessible units reaches people with disabilities. 24 C.F.R. § 8.27. Accessible units must also be distributed throughout housing projects and sites to the maximum extent feasible and be available in a range of sizes and amenities so that a person with a disability's choice of living arrangements is comparable to that of others. 24 C.F.R. § 8.26.

Ms. Ling does not, as the CRA and City suggest, seek directly to enforce the regulations found in §§ 8.22, 8.26 or 8.27. Instead, Ms. Ling seeks to use violations of these regulations as evidence that the CRA and City's Redevelopment Housing Program fails to provide meaningful access to people with disabilities. *See* ER at 522-23, ¶ 38 (noting that the regulations regarding these specific requirements provide important guidance about what steps may be necessary to ensure that people with physical disabilities have meaningful access to a housing program).

The case cited by the City and the CRA, *Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. Of Pittsburgh*, 382, F.3d 412, 419 (3d Cir. 2004), makes clear that while a plaintiff may not maintain a suit to *enforce* the HUD regulations, plaintiffs may "bring suit to enforce their personal rights to access directly under Section 504." District courts have consistently held that violations of regulations

21

implementing Section 504 may be used as evidence to show that an entity has failed to make its program accessible to people with disabilities, even when the regulations themselves were not privately enforceable. *Taylor v. The Hou. Auth. of New Haven*, 267 F.R.D. 36, 47 (D. Conn. 2010); *Huezo*, 2007 WL 7289347, at *8; *Telesca v. Long Island Hous. P'ship, Inc.*, 443 F. Supp. 2d 397, 410 (E.D.N.Y. 2006); *Cherry v. City Coll. of S.F.*, No. C04-4981 WHA, 2005 WL 2620560 (N.D. Cal. Oct. 14, 2005) (refusing to recognize a private right of action under Title II of the ADA to enforce regulations requiring a transition plan but noting that evidence of regulatory violations may be relevant to proving plaintiffs' claims of discrimination). For example, in *Telesca*, a person with a disability entered a lottery for an affordable homeownership unit from an affordable housing developer that received federal funds. 443 F. Supp. 2d at 399-400. The plaintiff was notified that she was selected to purchase a unit but the unit was inaccessible. *Id*. She requested various reasonable accommodations but the home was eventually offered to another applicant. *Id*. at 400-01. The plaintiff brought suit against the affordable housing developer, as well as the state and local agencies that provided federal funding to the project, alleging that she was not provided meaningful access to the affordable housing program. *Id*. at 399. Defendants filed a motion to dismiss. The district court held that the program access regulations set forth in 24 C.F.R. §§ 8.22 and 8.27 do not apply to homeownership projects. *Id*. at 409. However, the district

court recognized that "any of the HUD regulations implementing the Rehabilitation Act may be relevant to determining whether defendants are liable under Section 504, and what remedies are available to address such violations." *Id.* at 410 (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003).

Similarly, in *Huezo*, Judge Morrow found that the Los Angeles community college district failed to comply with regulations under the Rehabilitation Act and the ADA that required the defendant to evaluate its programs, services and facilities and prepare a transition plan. *Huezo*, 2007 WL 7289347, at *8. In granting plaintiff's motion for partial summary adjudication, the court explained that while the defendant's violation of the regulations "does not necessarily prove that defendant's services, programs, or activities are not accessible to qualified disabled persons (citation omitted), it is evidence tending to show that [plaintiff] was discriminated against with regard to defendant's services, programs or activities." *Id.* (citing *Cherry*, 2005 WL 2620560, at *4).

In this case, Ms. Ling similarly does not seek to directly enforce the HUD regulations setting forth architectural and other requirements at 24 C.F.R. §§ 8.22, 8.26 and 8.27. The CRA and City's violations of these regulations, however, is evidence tending to show that the CRA and City's Redevelopment Housing Program is not accessible to people with disabilities and that Ms. Ling was discriminated against with regard to Defendant's housing program. This likely

23

explains why the district court did not address the CRA and the City's argument regarding whether HUD's regulations regarding architectural and other requirements are privately enforceable. Regardless of whether the regulations are privately enforceable, violations of the regulations are evidence tending to show that CRA and City's Redevelopment Housing Program is not accessible to people with disabilities. Therefore, this Court should not uphold summary judgment on Ms. Ling's claims against the CRA and the City on this basis.

### III.   CONCLUSION

The district court committed reversible error in granting summary judgment to and dismissing the claims of the Appellees. Ms. Ling, therefore respectfully requests this Court to vacate in full the district court's order granting summary judgment and remand the case to be tried to a jury.

DATED:  February 28, 2014

Respectfully submitted,


By: _/s/_ Scott Parrish Moore
    Scott Parrish Moore (NE No. 20754)
    Allison Dana Balus (NE Bar No. 23270)
    BAIRD HOLM LLP
    1700 Farnam Street
    Suite 1500
    Omaha, Nebraska 68102

    (T) (402) 344-0500
    (F) (402) 344-0588
    spmoore@bairdholm.com
    abalus@bairdholm.com

    *Attorneys for Plaintiff-Appellant*
    *Mei Ling*

## IV.    STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellants represent that they are not aware of any related case pending in this Court.

## V.    CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Form 8. Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation, typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> ☒ this brief contains 6,419 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

> ❑ this brief uses a mono-spaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> ☒ this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

> ❑ this brief has been prepared in a mono-spaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Dated:
By: _/s/ Scott Parrish Moore_
    Scott Parrish Moore

27

## VI.  CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2014, I electronically filed the foregoing Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  February 28, 2014.

*/s/Scott Parrish Moore*
Scott Parrish Moore